**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| CANDY L. HARRIS, LYNN HARRIS, and ) | |
| CANDY L. HARRIS, as mother and next ) | |
| friend of JUSTIN C. HARRIS, a minor, ) | |
| ) | |
| **Plaintiffs** ) | |
| v. ) | **Case No. 07-CV-2041** |
| ) | |
| WAL-MART STORES, INC., ) | |
| ) | |
| **Defendant.** ) | |

**OPINION**

This case is before the court for ruling on the Motion for Summary Judgment (#22) filed by

Defendant, Wal-Mart Stores, Inc.  This court has carefully reviewed Defendants' Motion and

Memorandum in Support (#23), with attached supporting exhibits, as well as Memorandum in

Response (#28) filed by Plaintiffs, Candy L. Harris, Lynn Harris, and Candy L. Harris, as mother

and next friend of Justin C. Harris, with supporting exhibits (#29), and Defendant's Reply (#33).

Following this careful and thorough review, Defendant's Motion for Summary Judgment (#14) is

DENIED.

BACKGROUND

On February 20, 2007, Defendant filed a Notice of Removal (#1) and removed the Complaint

filed by Plaintiffs in the circuit court of Macon County to this court.[1]  In Count I of their Complaint,

Plaintiffs alleged that, on February 5, 2005, Justin C. Harris (Justin) accompanied his parents and

other family members to the Wal-Mart store located in Forsyth, Illinois.  Plaintiffs alleged that, as

---

[1]  Defendant stated that the Complaint involved a controversy between citizens of
different states and that the amount in controversy regarding Count I exceeds $75,000.  See 28
U.S.C. § 1332(a).

Justin was walking toward a sibling between a clothing rack and a shopping cart, his left eye was punctured on a four-cornered metal prong protruding from the clothing rack that was hidden by clothing hanging above it.  Plaintiffs alleged that Defendant was negligent in one or more of the following ways:

> (a) The metal prongs protruding from the metal rack should have been rounded at the corners to prevent puncture injuries;
>
> (b) The metal prongs protruding from the metal rack should have been guarded with rubber softener to prevent puncture injuries;
>
> (c) The metal prong stationed above the metal prong that caused the puncture injury should have been placed in a position so that clothing hanging from the prong would not cover and hide the metal prong below it; and
>
> (d) The metal prong [that] caused the injury should not have been at the stationed height level as it was foreseeable a small child would be with his parents and endangered by the protruding metal prong.

Plaintiffs alleged that, as a direct and proximate cause of Defendant's acts of negligence, Justin suffered severe and permanent injuries to the left eye that have greatly reduced his vision.  Plaintiffs sought damages in excess of $50,000 for these injuries.[2]

In Count II, Plaintiffs alleged that Justin's parents, Lynn Harris and Candy Harris, have become liable for large sums of money for medical expenses incurred by Justin on account of his

_____

[2]  This court has no reason to question, based upon the serious eye injury involved, that the matter in controversy exceeds the sum of $75,000.00.

injuries and have had their lives disrupted and have sustained damage.  Plaintiffs therefore sought

damages in Count II in an amount in excess of $50,000.00.

On February 21, 2007, Defendant filed an Answer and Affirmative Defenses (#4).  A

Discovery Order (#10) was entered on April 10, 1007, and this case was scheduled for a final pretrial

conference on October 10, 2008, and a jury trial on October 20, 2008.

On July 15, 2008, Defendant filed its Motion for Summary Judgment (#22), and a

Memorandum in Support (#23), with attached supporting exhibits.  Defendant argued that the

standard clothing rack on which Justin struck his eye "presented a danger to the minor plaintiff only

because he was allowed to run unsupervised through the store."  Defendant argued that Illinois

courts and federal courts interpreting Illinois law have made it clear that, under these circumstances,

Defendant owed no duty to Plaintiffs.  On August 13, 2008, Plaintiffs filed their Memorandum in

Response to Defendant's Motion for Summary Judgment (#28) and Exhibits in support (#29).

Plaintiffs argued that Defendant had mischaracterized the deposition testimony given in the case and

contended that, under the facts here, Defendant owed a duty to Justin and breached that duty.

Plaintiffs also argued that material facts are in dispute so that summary judgment should not be

granted.  Defendant filed a Reply (#33) on August 25, 2008, again arguing that it is entitled to

summary judgment.

The evidence submitted to this court can be summarized as follows.  At her deposition,

Candy testified that she was shopping at Wal-Mart on February 5, 2005, with her husband, their four

children, including Justin, and her mother and stepfather.  Justin was born on March 15, 2000, so

he was four years old at that time and was close to his fifth birthday.  After completing some other

shopping, Candy went to the women's clothing department to shop for jeans.  At that time, she was

with Justin, her daughter Breanna, her son Jonathan, who was seated in her shopping cart, and her

mother, Diana, who also had a shopping cart.  Candy testified that Breanna and Justin were running

in the clothing department.  Candy testified that she yelled at both of them and made them stop

running.  She made Justin come and stand by her.  Candy testified that Breanna was standing near

Diana, and was next to the shopping cart where Jonathan was sitting.  Candy testified that she was

standing near a clothing rack which had clothes hanging on it.  Based upon a drawing made by

Diana at her deposition, Diana's cart was located next to the clothing rack and was between Candy

and the shopping cart Jonathan was sitting in.[3]

Candy testified that Justin was standing next to her and asked to go by his sister.  Candy

testified that she "shook [her] head yes."  Candy was talking to Diana, and testified that "[o]ut of

the corner of my eye I watched him go between the cart and the rack.  When he got close to the rack,

he covered his face, and hit the floor crying."  Candy testified that, when Justin left to go by his

sister, he "bent over a little bit when he did to squeeze between the clothing, the edge of the clothing

and the rack."  Candy testified that his head was a little bit lower than normal.  Candy testified that

there were blouses hanging on the top part of the rack but no clothing was hanging on the bottom

bar of the rack where Justin was hurt.  Candy testified that the blouses covered most of the bottom

rack so "there was very little showing at the bottom."  She testified that she went to comfort Justin

and, when she looked at his eye, she saw "a lot of fluid and some blood."  Candy testified that Justin

severely injured his left eye, has had surgeries on the eye, and has extremely poor vision with his

left eye.  Candy testified that, since Justin's eye injury, she noticed that Target has the same kind

---

[3] Plaintiffs attached the drawing to their Response and referred to the drawing as a drawing made by Candy.  However, based upon the deposition testimony regarding the drawings made during the depositions, this court believes that the attached drawing was actually made by Diana.

of racks that Justin was injured on.

Candy's mother, Diana Collander, testified that Breanna and Justin were running in the clothing department when they were shopping on February 5, 2005. She testified that "Candy got after them, and told them to stop." Diana testified that Candy told Justin to come stand by her. Diana stated that "Justin went to move to go stand next to Breanna. He just took a couple of steps, and fell to the ground screaming oh, my eye, my eye." Diana explained that he "took a couple of steps and ducked to get past the rack that was standing there. It had some blouses on it, and he just kind of ducked to get past it." Diana testified that she had seen similar racks at Target. Diana testified that a blouse was covering the lower rack, and nothing was hanging on the lower rack. She stated that the bottom rack was about 30 inches off the ground, and Justin "kind of ducked to get between the cart and the blouse." Diana stated that there was approximately 1 ½ to 2 feet between the shopping cart and the clothing rack so there was "enough space for [Justin] to squeeze through."

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002).

## II. NEGLIGENCE CLAIM

"To state a cause of action for negligence, a plaintiff must establish the existence of a duty, the defendant's breach of that duty, and that the breach was the proximate cause of the plaintiff's resulting injuries." Harlin v. Sears Roebuck & Co., 860 N.E.2d 479, 484 (Ill. App. Ct. 2006). The imposition of a duty depends on: (1) the foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. Ward v. K mart Corp., 554 N.E.2d 223, 226-27 (Ill. 1990); Harlin, 860 N.E.2d at 484. "The determination of the existence of a duty presents a question of law appropriately determined by summary judgment." Harlin, 860 N.E.2d at 484; see also Ward, 554 N.E.2d at 140.

Generally speaking, an owner or occupier of land, such as Defendant, owes no greater duty to small children than the duty owed to adults. Harlin, 860 N.E.2d at 484; Perri v. Furama Rest., 781 N.E.2d 631, 635 (Ill. App. Ct. 2002). "The primary responsibility for the safety of a child rests with his or her parent, 'whose [responsibility] it is to see that the child is not placed in danger.'" Harlin, 860 N.E.2d at 484, quoting Mt. Zion State Bank & Tr. v. Consol. Commc'ns, Inc., 660 N.E.2d 863, 868 (Ill. 1995). The Illinois supreme court has stated that a duty will be imposed on an owner or occupier of land to exercise due care to remedy a dangerous condition on the land or otherwise protect children from injury due to the dangerous condition where: (1) the owner or occupier knows or should know that children habitually frequent the property; (2) a defective structure or dangerous condition is present on the property; (3) the defective structure or dangerous condition is likely to

injure children because they are incapable, due to their age and immaturity, of appreciating the risk

involved; and (4) the expense and inconvenience of remedying the defective structure or dangerous

condition is slight when compared to the risk to children.  Mt. Zion, 660 N.E.2d at 868, citing Kahn

v. James Burton Co., 126 N.E.2d 836, 842 (Ill. 1955); see also Workman v. Dinkins, 442 F. Supp.

2d 543, 550 (N.D. Ill. 2006).  However, "[e]ven if an owner or occupier knows that children frequent

his premises, he is not required to protect against the ever-present possibility that children will injure

themselves on obvious or common conditions."  Mt. Zion, 660 N.E.2d at 868, quoting  Corcoran v.

Vill. of Libertyville, 383 N.E.2d 177, 180 (Ill. 1978).

In Perri, the Illinois appellate court applied the Kahn factors to a situation where a child was

hurt while her parents were present.  In that case, family members, including the injured child and

her parents, went to eat at a restaurant.  The waitress who was seating the family placed a pot of hot

tea on a lazy susan on the table.  Another child in the extended family spun the lazy susan, causing

the pot of tea to tip over and spill.  The hot tea seriously burned a three-month-old child, whose

parents sued on her behalf and on their own behalf.  The trial court granted summary judgment in

favor of the defendant restaurant, finding that the other child's parents had a duty to supervise their

child and, because of the parents failure to supervise their child, the defendant restaurant owed no

duty to protect the injured child.  Perri, 781 N.E.2d at 633.  The appellate court reversed, stating:

> Here, the evidence presented by both parties demonstrates that the
>
> group, which included a two-year-old and a four-year-old child, was
>
> not yet seated when, unbeknownst to the adults, [the waitress] placed
>
> a pot of hot tea on the lazy susan.  None of the adults in the group
>
> actually saw the pot of tea until after the injury occurred.  A parent's

> duty to supervise requires the parent to exercise due care in the face
>
> of obvious risks.

Perri, 781 N.E.2d at 636.  The court went on to state that "[i]f parents or caregivers are unaware of

a particular danger, it is reasonably foreseeable that they will fail to prevent a minor child from

encountering that danger."  Perri, 781 N.E.2d at 637.  The court concluded that the "obviousness of

the danger" presented a "factual issue" so that summary judgment was inappropriate.  Perri, 781

N.E.2d at 637.

In Harlin, a two-year-old child was injured when she fell on a wooden display stand "with

metal on the bottom" at a Sears store.  Harlin, 860 N.E.2d at 482.  The child's mother, on the child's

behalf and her own behalf, sued and contended that the metal corner of the display stand constituted

a latent dangerous condition that a two-year-old child could not be expected to appreciate.  Harlin,

860 N.E.2d at 486.  The appellate court found that summary judgment was properly granted in favor

of Sears.  The court stated that a landowner is "absolved of a duty where the child was injured due

to an obvious danger while under the supervision of his or her parent, 'or when the parents knew of

the existence of the dangerous condition that caused the child's injury.'" Harlin, 860 N.E.2d at 486,

quoting Stevens v. Riley, 580 N.E.2d 160, 166-67 (Ill. App. Ct. 1991).  The court stated that the

child's mother testified that she saw the display stand before her child fell and that it was similar to

other stands in the department.  Harlin, 860 N.E.2d at 487.  The court concluded that "in this case

the parent was made aware of any dangerous condition, even if the injured child could not be

expected to appreciate it."  Harlin, 860 N.E.2d at 487.  The court further stated:

> This is not a case where a store negligently maintained its display
>
> stands in a manner such that it would be foreseeable that children

would attempt to climb upon and swing from them. [Citation.]
Rather, in this case, a child tripped for unknown reasons and injured
herself.  While it is always unfortunate when a child is injured, we
find that summary judgment was properly granted in this case.

Harlin, 860 N.E.2d at 487.

In Blackford v. Wal-Mart Stores, Inc., 2008 WL 905912 (S.D. Ill. 2008), United States District Judge G. Patrick Murphy recently granted summary judgment in a case involving a minor child who was injured at a retail store when accompanied by a parent.  In Blackford, the child's mother brought him to the store where his father worked.  While his parents were speaking to each other, the child activated and was injured by an unattended floor buffing machine near them in the lay-away area of the store.  Blackford, 2008 WL 905912, at *1.  The mother sued on the child's behalf and on her own behalf, seeking damages for the child's injuries and recovery for the medical bills for which she became liable as a result of the injuries.  Judge Murphy noted that there was no genuine dispute that the child's mother was aware of the buffer's presence.  He then rejected her argument that an issue of material fact existed regarding whether the buffer was an obvious danger because she was not aware that it could be activated by a child and that, unactivated, it posed no threat.  Judge Murphy concluded that "the buffer's danger was at least as obvious to [the mother] as was the store's display stand in Harlin, where an Illinois court granted summary judgment for the defendant because the danger posed by a wooden shelf with squared-off corners was obvious as a matter of law."  Blackford, 2008 WL 905912, at *3.  Judge Murphy also stated:

Here, it is clear that the cost to Wal-Mart to take all of the
precautions that would be necessary to render a store (or any place)

9

absolutely safe to a 2 ½ year old child is beyond the cost of the loss

that could be expected from any given instrumentality on which a

child may be injured, especially when that cost is discounted by the

likelihood of injury on any given object.  Almost all items in a store

pose some risk to a toddler, including all of the items on a shelf that

a child may pull down upon himself.  For a landowner such as Wal-

Mart, the cost of securing the entire store is simply too high to offset

the small chance that parent-supervised children will find a way to

injure themselves.

Blackford, 2008 WL 905912, at *2.

In this case, Defendant argued that it is entitled to summary judgment based upon Harlin and

Blackford.  Defendant contended that a "child running through the store, or squeezing between a

shopping cart and any other instrumentality, can poke his eye on any number of items in the store,

including clothes hangers, corners of shelving, bar-b-que grills, lawn mowers, lawn tractors,

bicycles, merchandise hooks, and any number of items of merchandise displayed for sale."

Defendant pointed out that Candy testified that the clothing rack on which Justin injured his eye is

a standard clothing rack that can be found at department stores other than Wal-Mart.  Defendant

further argued that the danger that a child could poke an eye while running or squeezing underneath

clothing racks is an obvious danger.

In response, Plaintiffs acknowledged the general rule that a landowner is absolved of liability

where a child is injured due to an obvious danger while under the supervision of the parent or when

the parent knew of the existence of the dangerous condition that caused the child's injury.  Plaintiffs

argued, however, that the evidence shows that Candy had stopped Justin from running prior to the

incident and was not aware of the metal prong Justin injured his eye on.  Plaintiffs argued that this

case is distinguishable from <u>Harlin</u>, where the dangerous condition of the display stand was its

bottom that was noncircular and had sharp metal edges - in plain view for all customers.  Plaintiffs

contended that, in this case, Justin was injured on a four cornered metal prong attached to a metal

rod on a clothing rack which was concealed by a blouse hanging down over the surface of the rod

and obscuring it from the view of the general public.  Plaintiffs argued that "simply noticing the

clothing rack [did] not constitute an obvious danger."  Plaintiffs contended that the danger of the

metal prong "was not and could not be observed by the supervising parents or Justin himself"

because clothing was obscuring the view of the metal prong and there was no clothing hanging on

the lower rack to give notice that the metal prong was present.  Plaintiffs argued that this case fits

within the exception to the general rule explained in <u>Perri</u> because Candy was not aware of the

danger.

Plaintiffs further argued that summary judgment should be denied because they have shown

that Defendant owed a duty to Justin based upon the four-part test set out by the Illinois supreme

court.  They contended that: (1) there is no question that Defendant knows children habitually

frequent its store; (2) a "dangerous condition existed and it was hidden to the customers of the

store;" (3) this dangerous condition was approximately 30 inches off the ground and likely to injure

children; and (4) the expense and inconvenience of remedying the defective structure or dangerous

condition is slight when compared to the risk to children.  As to the fourth element, Plaintiffs stated:

> This dangerous condition had multiple inexpensive and non-time-
>
> consuming remedies that are practical, common sense and should be

a policy for a retail store.  The empty metal prong on the clothing

rack was removable and could have simply been taken off the

clothing rack.  A Wal-Mart Associate could have altered the clothing

above the empty metal prong so that it would not be hidden to the

general public or children.  Clothing could have been hung from the

metal prong so that it would put a person on notice that the prong was

present.  These remedies cost basically no money and are not time

intensive.

In its Reply, Defendant essentially conceded that Justin was not running in the store at the

exact moment of the incident.  However, Defendant argued that this fact does not preclude summary

judgment.  Defendant contended that Justin "had no reason to walk, duck, climb, or run through

clothes hanging from a clothing rack."  Defendant argued that the "danger of walking into what

cannot be seen . . . is an obvious danger."  Defendant contended that walking into clothing hanging

from a clothing rack had many possible risks.  It argued that the "minor child may not have been

able to appreciate the danger presented by going through hanging clothes, but any reasonable

supervising parent would."  Defendant also noted that Plaintiffs have presented no evidence to

support their argument regarding the low cost of remedying the alleged dangerous condition.

The question squarely before this court is whether Justin was injured due to an obvious

danger while under the supervision of his parent, so that Defendant is "absolved of a duty."  See

Harlin, 860 N.E.2d at 486.  The evidence presented to this court presents a close question.  However,

this court concludes that this case is more similar to Perri than it is to Harlin and Blackford.

Evidence was presented that the prong of the clothing rack was concealed by a blouse and that

Candy was not aware that it was there when Justin went between the clothing rack and the shopping

cart.  "Whether a condition presents an open and obvious danger . . . is a question of fact."  <u>Perri</u>,

781 N.E.2d at 637.  Therefore, this court concludes that a genuine issue of material fact exists in this

case and summary judgment is inappropriate.  <u>See</u> <u>Perri</u>, 781 N.E.2d at 637.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment (#22) is DENIED.

(2) This case remains scheduled for a final pretrial conference on October 10, 2008, at 9:30

a.m. and a jury trial on October 20, 2008, at 9:00 a.m.

ENTERED this 10th day of September, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE