UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

---

| | |
|---|---|
| **CANDY L. HARRIS, LYNN HARRIS, and CANDY L. HARRIS, as mother and next friend of JUSTIN C. HARRIS, a minor,** )<br>)<br>)<br>) | |
| **Plaintiffs,** ) | |
| v. ) | **Case No. 07-CV-2041** |
| **WAL-MART STORES, INC.,** )<br>) | |
| **Defendant.** ) | |

## OPINION

This case is before the court for ruling on the Motions in Limine (#44) filed by Defendant, Wal-Mart Stores, Inc., and the Motions in Limine (#45) filed by Plaintiffs, Candy L. Harris, Lynn Harris, and Candy L. Harris, as mother and next friend of Justin C. Harris. This court has carefully reviewed the Motions and the Responses (#49, #51). Following this court's careful consideration, Defendant's Motions in Limine (#44) are GRANTED in part and DENIED in part and Plaintiffs' Motions in Limine (#45) are GRANTED in part and DENIED in part.

I. DEFENDANT'S MOTIONS IN LIMINE

On March 26, 2009, Defendant filed its Motions in Limine (#44). Defendant first requested an order barring testimony from Plaintiff Candy Harris (Candy), or any other witnesses, that the clothing racks were "rearranged" after the incident at issue in this case. Defendant argued that this evidence is not probative and would constitute evidence regarding a subsequent remedial measure, which is inadmissible. In their Response (#51), Plaintiffs stated that they have no objection to this request and it is GRANTED.

Defendant's second request is for an order barring testimony from Candy regarding information she received from her physicians concerning the prognosis for the injury suffered by

Justin Harris (Justin).  Defendant noted that the parties have taken extensive depositions of Justin's treating physicians, who were subject to cross-examination.  Defendant argued that Plaintiffs should not be allowed to present hearsay testimony regarding physicians' statements.  Plaintiffs have no objection to this request and it is GRANTED.

Defendant's third request is for an order barring testimony from Candy concerning what jobs she believes Justin might be able to do in the future.  Plaintiffs have no objection to this request and it is GRANTED.

Defendant's fourth request is for an order barring testimony by Plaintiffs concerning their alleged financial stress subsequent to the date of the accident.  Plaintiffs have no objection to this request and it is GRANTED.

Defendant's fifth request is for an order barring any evidence or reference to the Social Security Administration's findings concerning Justin's claims of disability.  Plaintiffs have no objection to this request and it is GRANTED.

On April 9, 2009, Defendant filed a Motion to Withdraw (#48) and asked to withdraw its sixth request included in its Motions in Limine.  This court granted the Motion to Withdraw (#48) on April 14, 2009.  Accordingly, no discussion of Defendant's sixth request is necessary.

Defendant's seventh request is for an order barring any and all testimony regarding Justin's future damages, future disability, future medical care, or testimony that his injuries and/or disability are permanent other than the opinions set forth in the testimony of the treating physicians who have given their depositions in this case.  Plaintiffs have no objection to this request and it is GRANTED.

Defendant's eighth request is for an order barring any reference to the existence of insurance or the alleged existence of insurance in this case.  Plaintiffs have no objection to this request and it

is GRANTED.

Defendant's ninth request is for an order barring evidence or argument regarding any offers of settlement or refusals to make offers of settlement by Defendant. Plaintiffs have no objection to this request and it is GRANTED.

Defendant's tenth request is for an order barring any testimony or representation by Plaintiffs' counsel in the presence of the jury of any fact or the credibility of any witness based on his personal experience or knowledge. In support of this request, Defendant argued that it is not proper for counsel to testify at trial or, as an advocate, place his credibility at issue because Defendant has no means by which to cross-examine counsel. Defendant also argued that counsel may not endorse the credibility of any witness or express an opinion to the jury that he believes the testimony of any witness. Defendant cited no case law support for these arguments.

In their Response (#51), Plaintiffs objected to this request. Plaintiffs stated that, obviously, there would be no testimony from Plaintiffs' counsel. Plaintiffs argued that Defendant's request to bar "representations" is vague and unduly restrictive. Plaintiffs argued that their counsel should not be prohibited from arguing the inferences to be drawn by the establishment of any fact in evidence or the weight to be given the credibility of any witness based upon the witness's demeanor and the overall circumstances in which the testimony was presented. Plaintiffs noted that United States District Judge Jeanne E. Scott recently denied a similar request. Judge Scott stated:

> Plaintiffs ask the Court to prohibit defense counsel from referring to their own opinions or knowledge when commenting on the truth or credibility of evidence. This motion is denied. While attorneys clearly cannot testify or vouch for the truthfulness of a witness's

3

>>testimony, Plaintiffs make no attempt to explain why they believe defense counsel might inject personal commentary here. [Citation omitted.] Thus, this motion is overly ambiguous and is denied for that reason.

Cimaglia v. Union Pacific R. Co., 2009 WL 499287, at *9 (C.D. Ill. 2009).

This court concludes that, here also, Defendant has not shown any need for the broad order requested. Defendant's tenth request is accordingly DENIED.

Defendant's eleventh request is for an order barring any reference to the relative economic disparity of the parties or the alleged manner in which the party acquired alleged wealth. Plaintiffs have no objection to this request and it is GRANTED.

Defendant's twelfth request is for an order barring any testimony from Candy or Lynn Harris, or any other friend or family member, concerning Justin's ability to see, read an eye chart, or other statements relating to visual acuity. Defendant argued that Justin has been treated by numerous opthamologists who could be called to testify concerning testing they performed. Defendant also complained that Plaintiffs did not produce Justin for an independent medical examination scheduled by Defendant, thus depriving Defendant of any current information concerning Justin's vision. Defendant further argued that Justin is now old enough to testify concerning his visual acuity. Defendant contended that allowing Justin's parents to testify concerning Justin's visual acuity, ability to read and other conclusions would allow them to give expert testimony when they have no such expertise.

Plaintiffs have objected to Defendant's request. Plaintiffs argued that the request seeks to unduly restrict them from testifying concerning their observations with respect to Justin's day-to day

functioning, ability to function based upon his more limited eyesight, and his overall ability to negotiate his day-to-day life based upon the diminution of visual acuity.  Plaintiffs argued that testimony regarding their observations would not be inadmissible under the Federal Rules of Evidence unless the testimony attempted to reach legal conclusions concerning visual acuity or technical parameters with respect to the diminution of Justin's ability to see.  Plaintiffs argued that they, as Justin's parents "would certainly be as able as any other witness to testify as to their observations with respect to the impact that the injuries had upon [Justin]."

This court agrees with Plaintiffs' arguments and concludes that Justin's parents should be allowed to testify regarding their observations.  Defendant's twelfth request is therefore DENIED.

Defendant's thirteenth request is for an order barring any testimony from Candy or Lynn Harris, or other family members or friends, concerning Justin's performance in school, or what happened to him in school, that they did not personally witness.  Plaintiffs have no objection to this request and it is GRANTED.

Defendant's fourteenth request is for an order barring any reference in the presence of the jury to the court's rulings on the motions in limine.  Plaintiffs have no objection to this request and it is GRANTED.

## II.  PLAINTIFFS' MOTIONS IN LIMINE

On March 26, 2009, Plaintiffs filed their Motions in Limine (#45).  Plaintiffs first requested an order prohibiting any attorney or the parties or any witnesses from making any reference in the presence of the jury or prospective jurors that Justin was "running" in the store at the time of the incident or that he was engaged in any "horseplay."  Plaintiffs argued that Defendant essentially conceded that Justin was not running in the store at the time of the incident in its Reply in support

of its Motion for Summary Judgment. Plaintiffs also argued that there has been no evidence brought forth by any party or witness that Justin was running in the store or engaged in any horseplay or other inappropriate behavior at the time of the incident. Plaintiffs further argued that, because Justin was not quite five years old at the time of the incident, any testimony concerning his behavior prior to the incident would be prejudicial to him as he was incapable of appreciating the danger of running in the store and, thus, cannot be guilty of contributory negligence.

In its Memorandum in Opposition to Plaintiffs' Motions in Limine (#49), Defendant objected to this request. Defendant stated that it did not concede for purposes of trial that Justin stopped running or was not engaged in "horseplay" at the time of the incident. Defendant stated that it conceded for purposes of summary judgment that Candy claimed Justin had stopped running before the incident. Defendant noted that, at the summary judgment stage of the proceedings, Defendant and the court were required to accept the evidence in a light most favorable to Plaintiffs pursuant to Rule 56 of the Federal Rules of Civil Procedure. In the Opinion (#34) denying Defendant's Motion for Summary Judgment, this court, accepting the evidence in a light most favorable to Plaintiffs, concluded that the case presented a close question regarding whether Justin was injured due to an obvious danger while under the supervision of his parent so that Defendant was "absolved of a duty." This court noted that whether a condition presents an open or obvious danger is a question of fact. This court therefore concluded that a genuine issue of material fact existed in this case.

The question to be decided by the jury is not whether Justin can be guilty of contributory negligence but whether Justin was injured due to an obvious danger while under the supervision of his parent or when his parent knew of the existence of the dangerous condition that caused Justin's

injury. As this court stated in it Opinion (#34):

> "The primary responsibility for the safety of a child rests with his or her parent, 'whose [responsibility] it is to see that the child is not placed in danger.'" [Harlin v. Sears Roebuck & Co., 860 N.E.2d 479, 484 (Ill. App. Ct. 2006)], quoting Mt. Zion State Bank & Tr. v. Consol. Commc'ns, Inc., 660 N.E.2d 863, 868 (Ill. 1995). The Illinois supreme court has stated that a duty will be imposed on an owner or occupier of land to exercise due care to remedy a dangerous condition on the land or otherwise protect children from injury due to the dangerous condition where: (1) the owner or occupier knows or should know that children habitually frequent the property; (2) a defective structure or dangerous condition is present on the property; (3) the defective structure or dangerous condition is likely to injure children because they are incapable, due to their age and immaturity, of appreciating the risk involved; and (4) the expense and inconvenience of remedying the defective structure or dangerous condition is slight when compared to the risk to children. Mt. Zion, 660 N.E.2d at 868, citing Kahn v. James Burton Co., 126 N.E.2d 836, 842 (Ill. 1955); see also Workman v. Dinkins, 442 F. Supp. 2d 543, 550 (N.D. Ill. 2006). However, "[e]ven if an owner or occupier knows that children frequent his premises, he is not required to protect against the ever-present possibility that children will injure

themselves on obvious or common conditions." Mt. Zion, 660 N.E.2d at 868, quoting Corcoran v. Vill. of Libertyville, 383 N.E.2d 177, 180 (Ill. 1978).

This court also stated that a landowner is "absolved of a duty where the child was injured due to an obvious danger while under the supervision of his or her parent, 'or when the parents knew of the existence of the dangerous condition that caused the child's injury.'" Harlin, 860 N.E.2d at 486, quoting Stevens v. Riley, 580 N.E.2d 160, 166-67 (Ill. App. Ct. 1991).

Defendant has argued that it is undisputed that the bottom level bar of the clothing rack was below Justin's eye level, which suggests that he was running, ducking, plunging, diving or, in any event, "horsing around." Defendant argued that, otherwise, his eye would have been above the bar of the clothing rack. Defendant contended that the circumstantial evidence indicates that Justin was not walking at the time his eye struck the bar. Defendant argued that it will argue at trial that no store is safe for a child who is permitted to use its store as a playground. Defendant also argued that it is entitled to present evidence to support its theory of the case and has disclosed evidence that Justin was running prior to the incident. Defendant stated that it produced a statement to Plaintiffs from Jennifer Tate, an employee of Defendant who was present the day Justin was injured. Defendant attached a copy of Tate's handwritten statement, dated February 7, 2005. In her written statement, Tate stated that she heard Justin crying after he hit his eye on the rack. Tate also stated that, just before she heard Justin crying, she saw two children, a boy and a girl, chasing each other around clothing racks and told them to stop running. However, Tate also stated that she did not know if it was Justin and his sister that she told to stop running or if it was two other kids. Defendant stated that Plaintiffs chose not to depose Tate or any of the witnesses disclosed by

Defendant.

This court agrees with Defendant that it is entitled to present evidence in support of its theory of the case and argue reasonable inferences from the evidence to the jury regarding the factual issues to be decided by the jury. This court concludes that Defendant can argue that Justin was not adequately supervised prior to his injury and was injured on an obvious or common condition. This court further concludes that Defendant can present testimony from Tate that she saw two children running just before Justin injured his eye on the clothing rack. This testimony can obviously be impeached by Tate's statement that she does not know whether it was Justin and his sister.

For the reasons stated, this court concludes that Plaintiffs are not entitled to an order prohibiting any attorney or the parties or any witnesses from making any reference in the presence of the jury or prospective jurors that Justin was "running" in the store at the time of the incident or that he was engaged in any "horseplay." Plaintiffs' first request is DENIED.

Plaintiffs' second request is for an order barring any evidence or argument that any employees or agents of Defendant issued any warnings that Justin should stop running through the clothing racks to Justin, any of his siblings, his parents or his grandmother, prior to the incident. Plaintiffs noted that Candy and her mother both testified that they did not receive any such warning.

In its Response, Defendant argued that Tate's "statement explicitly states that she warned plaintiffs that the children should not run in the store." However, that is not at all what Tate said in her handwritten statement. Tate said that she told two children to stop running and that she does not know if it was Justin and his sister or two other kids. This court agrees with Plaintiffs that this testimony should not be allowed. Only a warning to Justin's parents would be relevant to the issues before the jury in this case. Testimony regarding a possible warning issued to four-year-old Justin

9

is not relevant and will not be allowed. For the reasons stated, Plaintiffs' second request is GRANTED.

Plaintiffs' third request is for an order barring Defendant from impeaching Candy's testimony with evidence that she was previously convicted of Class A misdemeanor theft (less than $300.00) in Mason County, Illinois. Plaintiffs argued that the crime charged was not a crime of dishonesty and should not be admitted pursuant to Rule 609(a)(2) of the Federal Rules of Evidence.

Defendant argued that Candy's theft involved making a false statement so that it is proper impeachment evidence. Defendant further argued that Candy's credibility is relevant to liability, proximate cause and damages so that Defendant should be allowed to present all evidence that affects her credibility. In support of its argument, Defendant attached an excerpt from Candy's deposition testimony. The relevant testimony is as follows:

> Q. What did this conviction relate to?
>
> A. Between the time Justin was born and shortly after John was born my husband and I split up a couple of times. When we were split up, I got food stamps. I think I applied once when we split up the first time, and then again when we split up the second time, and it lapsed in between. He never had his mail changed from our address in Easton. So, they said that he lived with me the whole time. So, it was technically for getting food stamps they said I wasn't entitled to.
>
> Q. Were you represented by counsel?
>
> A. Yes.

**Q.** Who?

**A.** Amanda Ade.

**Q.** I take it you pled guilty to the charge?

**A.** Yes.

Rule 609(a)(2) provides that, for the purpose of attacking the character or truthfulness of a witness, "evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." The Seventh Circuit has stated that Rule 609(a)(2) applies to crimes involving "some element of misrepresentation or other indication of a propensity to lie and exclud[es] those crimes which, bad though they are, do not carry with them a tinge of falsification." United States v. Amaechi, 991 F.2d 374, 378 (7th Cir. 1993), quoting United States v. Ortega, 561 F.2d 803, 806 (9th Cir. 1977). The Seventh Circuit has stated that theft "is arguably not a crime involving dishonesty or false statement." United States v. Byrd, 771 F.2d 215, 219 (7th Cir. 1985). Accordingly, in United States v. Owens, 145 F.3d 923, 927 (7th Cir. 1998), the Seventh Circuit held that the district court did not abuse its discretion in declining to allow a witness to be impeached with evidence of a misdemeanor theft conviction. In Jones v. Sheahan, 2003 WL 21654279 (N.D. Ill. 2003), the district court concluded that the plaintiff's conviction of theft of services, for which he received a sentence of two days with time considered served, did not fall within the scope of Rule 609(a)(2). The court relied on cases that held that petty shoplifting does not qualify as a crime of dishonesty. Jones, 2003 WL 21654279, at *4, citing United States v. Galati, 230 F.3d 254, 261 (7th Cir. 2000); Amaechi, 991 F.2d at 378, 379 n.2. However, theft may be admissible under Rule 609(a)(2) if the party seeking its admission can

produce facts demonstrating that the particular conviction involved fraud or deceit. United States v. Mebust, 1994 WL 113114, at *2 (N.D. Ill. 1994), citing United States v. Yeo, 739 F.2d 385, 388 (8th Cir. 1984).

In this case, Defendant has provided an excerpt of Candy's deposition testimony in support of its argument that her misdemeanor theft conviction involved fraud or deceit. Defendant argued that she "admitted that she pled guilty to theft because she made false statements to the government regarding whether she qualified for food stamps." This court concludes that Candy's testimony does not support this argument. Candy admitted that she pled guilty but did not testify that she made false statements. Her testimony, in fact, was that her husband did not change his address when they were split up so the charge "was technically for getting food stamps they said I wasn't entitled to."

This court concludes that Defendant has not met its burden to show that Candy's conviction of misdemeanor theft (under $300.00) involved fraud or deceit. Accordingly, Plaintiff's request that this court enter an order prohibiting evidence of her prior conviction is GRANTED.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motions in Limine (#44) are GRANTED in part and DENIED in part.

(2) Plaintiffs' Motions in Limine (#45) are GRANTED in part and DENIED in part.

(3) This case remains scheduled for a final pretrial conference on April 16, 2009, at 1:30 p.m. and for a jury trial on May 4, 2009, at 9:00 a.m.

ENTERED this 16th day of April, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE