UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| CANDY L. HARRIS, LYNN HARRIS, and CANDY L. HARRIS, as mother and next friend of JUSTIN C. HARRIS, a minor,<br><br>     Plaintiffs,<br>  v.<br><br>WAL-MART STORES, INC.,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 07-CV-2041<br>)<br>)<br>)<br>) |

## OPINION

A jury trial commenced in this case on May 4, 2009, and concluded on May 7, 2009.  The jury found in favor of Plaintiffs and against Defendant.  The jury awarded $135,000 for the claim brought on behalf of Justin Harris (Justin) (#74) and awarded $55,000 for the claim brought by Justin's parents, Candy L. Harris (Candy) and Lynn Harris (#75).  The jury verdict (#75) provided that the parents' damages amounted to $100,000 but were reduced by 45% due to the negligence attributable to Candy, so that the award to the parents was $55,000.  Judgment was entered on the jury's verdict for a total award in favor of Plaintiffs and against Defendant in the amount of $190,000.00 (#76).  This case is now before the court for ruling on the Post Trial Motion (#79) filed by Defendant, Wal-Mart Stores, Inc.  Following this court's careful review of the arguments of the parties, Defendant's Post Trial Motion (#79) is DENIED.

## ANALYSIS

On May 18, 2009, Defendant filed it Post Trial Motion (#79) and Memorandum in Support (#80).  On May 21, 2009, Plaintiffs filed a Memorandum in Opposition to Defendant's Motion for Contribution from Candy Harris (#81).  On May 22, 2009, Plaintiffs filed a Memorandum in Opposition to Defendant's Post Trial Motion (#82).  On June 4, 2009, Defendant filed a

Memorandum in Support of its Contribution Claim (#83).

MOTION FOR JUDGMENT AS A MATTER OF LAW

In its Post Trial Motion, Defendant first argued that it is entitled to judgment notwithstanding the verdict because Plaintiffs failed to present sufficient evidence to establish all of the elements of a claim for negligence. Defendant argued that, based upon the evidence presented, Justin was looking to the side when he struck his eye and did not see the clothing rack before the alleged incident. Defendant contended that the alleged negligent act of covering the lower bar could not have proximately caused the claimed injury because Justin, the minor Plaintiff, would have run into the clothing rack anyway.

This court notes that it must consider Defendant's Post Trial Motion as a renewed Motion for Judgment as a Matter of Law and Motion for New Trial brought under Rule 50(b) of the Federal Rules of Civil Procedure. This court concludes that Defendant is not entitled to judgment as a matter of law. "The issue of proximate cause in a negligence action is generally an issue of material fact to be decided by the trier of fact." Strutz v. Vicere, 906 N.E.2d 1261, 1264 (Ill. App. Ct. 2009). It is only when the facts "show that the plaintiff would never be entitled to recover" that "proximate cause can be determined by a court as a matter of law." See Strutz, 906 N.E.2d at 1264. In this case, Plaintiffs presented evidence that the lower bar of the clothing rack in Defendant's store was covered by blouses hanging on the upper rack and that Justin severely injured his eye when his eye came in contact with the lower bar. This court agrees with Plaintiffs that, based upon the evidence introduced at trial, the jury could reasonably infer that Justin was unable to appreciate the hidden risk of the lower bar of the clothing rack which was covered by blouses hanging from the upper rack and that Defendant's negligence in covering the lower bar was the proximate cause of Justin's

injury.

This case is not similar to the cases relied on by Defendant, <u>Strutz</u> and <u>Kellman v. Twin Orchard Country Club</u>, 560 N.E.2d 888 (Ill. App. Ct. 1990). In both <u>Strutz</u> and <u>Kellman</u>, there was no eyewitness to the incident and no evidence as to the cause of the injury. See <u>Strutz</u>, 906 N.E.2d at 1265-66; <u>Kellman</u>, 560 N.E.2d at 974-75. In this case, there were eyewitnesses to the incident and they provided testimony from which the jury could determine that Defendant's negligence was the proximate cause of Justin's injury. This court therefore agrees with Plaintiffs that they produced sufficient evidence to establish all of the elements for their claims of negligence. Plaintiffs introduced sufficient evidence to establish that Defendant owed a duty, that Defendant breached that duty, and that Defendant's breach was the proximate cause of the injuries sustained by Justin and his parents. See <u>Am. Nat'l Bank & Tr. Co. v. Nat'l Advertising Co.</u>, 594 N.E.2d 313, 318 (Ill. 1992).

## MOTION FOR NEW TRIAL

Defendant next argued that it is entitled to a new trial because this court erred in excluding evidence that Candy had been convicted of theft under $300 and in excluding evidence that Defendant had not experienced any prior injuries with children injuring themselves on lower bars of clothing racks. Defendant also argued that this court erred in instructing the jury on simple negligence rather than premises liability.

This court agrees with Plaintiffs that Defendant is not entitled to a new trial in this case. This court adheres to its ruling that evidence of Candy's prior conviction of theft under $300 was not proper impeachment evidence. Defendant did not show that "establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." See Fed. R.

Evid. 609(a)(2); see also United States v. Owens, 145 F.3d 923, 927 (7th Cir. 1998) (district court acted within its discretion in excluding conviction of theft); Jones v. Sheahan, 2003 WL 21654279, at *4 (N.D. Ill. 2003) (conviction of theft of services not admissible for impeachment). This court concludes that the case relied upon by Defendant, United States v. Papia, 560 F.2d 827 (7th Cir. 1977), does not help its position.[1] In Papia, the Seventh Circuit declined to decide whether a conviction of theft involved dishonesty or false statement, stating "we are not anxious to enter the fray and, fortunately, are able to decide this case without having to rule on the general question of whether all crimes involving stealing necessarily involve 'dishonesty' within the meaning of Rule 609(a)(2)." Papia, 560 F.2d at 847. Instead, the court determined that the trial judge properly allowed evidence of a conviction of theft under $100 to be used for impeachment on "the basis of the Government's uncontested assertion that [the] theft conviction rested on facts revealing fraud and deceit." Papia, 560 F.2d at 847-48. In this case, Plaintiffs vigorously contested whether Candy's conviction involved fraud and deceit, and Defendant was unable to show that it did, either in its filings with the court or in its offer of proof during trial.

This court also adheres to its ruling that Defendant could not properly present evidence concerning the lack of any prior similar accidents involving the clothing racks. In arguing that this court erred in precluding this evidence, Defendant relied on the decision in Gallick v. Novotney, 464 N.E.2d 846 (Ill. App. Ct. 1984). In Gallick, the plaintiff brought an action to recover for injuries she sustained when she fell as she was leaving the defendant's store, alleging that the fall was caused

---

[1] The other cases cited by Defendant are completely inapposite. See United States v. Byrd, 771 F.2d 215, 219 (7th Cir. 1985) (mention of theft conviction was harmless because it was linked to forgery convictions which were properly admitted for impeachment); United States v. Kuecker, 740 F.2d 496, 501 (7th Cir. 1984) (conviction of mail fraud involves "dishonesty or false statement").

by a 1 ½ inch change in elevation between two sidewalk slabs. Gallick, 464 N.E.2d at 847. The Illinois Appellate Court held that the circuit court properly allowed testimony "that there were no prior complaints of falls occurring at the exit of the store." Gallick, 464 N.E.2d at 848. In doing so, the court noted that a proper foundation was laid for this evidence because the "defendants testified that no material changes were made in the exit way between the time it was constructed and the time of the accident." Gallick, 464 N.E.2d at 848-49. This court agrees with Plaintiffs that Defendant did not adequately show that the evidence it proposed was admissible. The testimony proposed by Defendant did not include evidence that the condition of the clothing racks was the same, with no changes made, during the time period where no similar accidents occurred. Therefore, this court concludes that the evidence was properly excluded.

Finally, this court concludes that the jury was appropriately instructed in this case. This court instructed the jury regarding the elements of a cause of action for negligence because Plaintiffs' claim was based on negligence. See Reed v. Wal-Mart Stores, Inc., 700 N.E.2d 212, 215 (Ill. App. Ct. 1993). This court notes that it did also instruct the jury that, if Defendant proved that Candy failed to properly supervise Justin and failed to protect him against an obvious danger, its verdict should be in favor of Defendant. This was based upon the case law which stated that, in a case which involves an injury to a minor child who is being supervised by a parent, the defendant is "absolved of a duty where the child was injured due to an obvious danger while under the supervision of his or her parent, 'or when the parents knew of the existence of the dangerous condition that caused the child's injury.'" Harlin v. Sears Roebuck & Co., 860 N.E. 2d 479, 486 (Ill. App. Ct. 2006), quoting Stevens v. Riley, 580 N.E.2d 160, 166-67 (Ill. App. Ct. 1991). This court concludes that the instructions given in this case were accurate statements of the law and were fair

to both sides.

REQUEST FOR CONTRIBUTION

In its Post Trial Motion, Defendant also argued that it is entitled to a 45% reduction in the $135,000 awarded for Justin's claim. Defendant argued that it filed a Counterclaim for Contribution (#12) against Candy for Justin's claims. In its Counterclaim, Defendant alleged that Candy's negligence in failing to properly supervise Justin proximately caused Justin's injuries. Defendant contended that, because the jury found that Candy was 45% contributorily negligent, the verdict in favor of Justin should be reduced by $60,750. Defendant cited no case law authority in support of its argument that it is entitled to contribution from Candy for Justin's claim.

In their Memorandum in Opposition to Defendant's Motion for Contribution (#81), Plaintiffs first argued that Defendant has waived this issue by failing to persist in pursuing its counterclaim for contribution during trial. Plaintiffs also argued that Defendant cannot obtain contribution from Candy because of the effect of parent-child immunity. Plaintiffs argued that Illinois law does not support a right of contribution in negligent parent supervision claims.

Defendant subsequently filed a Memorandum in Support of its Contribution Claim (#83). Defendant argued that it did not waive its contribution claim. Defendant also argued that parent-child immunity does not apply to preclude its third-party contribution claim against Justin's mother, Candy.

During a jury instruction conference held in this case during trial, this court stated that the law is clear that any contributory negligence based on the acts or omissions of Justin's mother would relate only to the parents' claim and cannot be imputed to the child, citing VonBehren v. Bradley, 640 N.E.2d 664, 667 (Ill. App. Ct. 1994), and Rahn v. Beurskens, 213 N.E.2d 301, 305 (Ill. App.

Ct. 1966). This court's proposed instructions, therefore, did not include an instruction that the damages awarded to Justin could be reduced based upon the percentage of fault attributed to his mother, Candy. It is this court's recollection that Defendant did not make a specific objection regarding the lack of such an instruction.

Defendant argues that its right to contribution against Candy is different from its right to reduce the judgment in favor of the parents for Candy's contributory negligence. Defendant argues that it did not waive its counterclaim because it did not, at any time, withdraw its counterclaim or indicate that it was not pursuing its counterclaim. This court therefore declines to find waiver. Instead, this court concludes that Plaintiffs are correct that Defendant cannot obtain contribution from Candy because of the effect of parent-child immunity.

"The right of contribution will not always prevail over the competing immunity." Ramsey v. Morrison, 676 N.E.2d 1304, 1307 (Ill. 1997); see also Bd. of Trs. of Community College, Dist. No. 508, County of Cook v. Coopers & Lybrand LLP, 696 N.E.2d 3, 9 (Ill. App. Ct. 1998). Instead, the courts in Illinois "balance the policy considerations supporting contribution against those supporting immunity to determine which doctrine should prevail in a particular case." Ramsey, 676 N.E.2d at 1307. Defendant is correct that in three cases decided in 1982 and 1984, the Illinois Appellate Court held that parent-child immunity was not a bar to contribution claims brought under the Joint Tortfeasor Contribution Act (Contribution Act), 740 Ill. Comp. Stat. 100/0.01 through 100/5 (West 2004). See Hartigan v. Beery, 470 N.E.2d 571 (Ill. App. Ct. 1984); Moon v. Thompson, 469 N.E.2d 365 (Ill. App. Ct. 1984); Larson v. Buschkamp, 435 N.E.2d 221 (Ill. App. Ct. 1982); see also Aimone by Aimone v. Walgreen's Co., 601 F. Supp. 507, 516 (N.D. Ill. 1985) (district court recognized that, based upon the decisions of the Illinois appellate courts regarding

contribution, immunity doctrines do not automatically come into play).

In <u>Larson</u>, three minor children were passengers in a car driven by their father and were injured when the car collided with another vehicle. <u>Larson</u>, 435 N.E.2d at 222. The children's mother filed an action on the children's behalf against their father and the owner and driver of the other vehicle (other defendants). <u>Larson</u>, 435 N.E.2d at 222. The other defendants filed a counterclaim seeking contribution from the father of the children. <u>Larson</u>, 435 N.E.2d at 222-23. The trial court dismissed the children's action against their father and also dismissed the counterclaim for contribution, finding that the father was immune from suit by his children and was therefore not "subject to liability in tort" for purposes of the Contribution Act. <u>Larson</u>, 435 N.E.2d at 223. On appeal, the court concluded that "in Illinois the courts continue generally to give vitality to the parent-child tort immunity doctrine as a consequence of public policy considerations favoring the promotion of family harmony and the prevention of intrafamily litigation and strife." <u>Larson</u>, 435 N.E.2d at 224. The court noted, however, that the "rule has been modified where the purpose of the doctrine will not be served." <u>Larson</u>, 435 N.E.2d at 224. The court in <u>Larson</u> held that, under the facts pleaded in that case, "contribution may be sought from a parent of an injured minor child where the parent's alleged negligence contributed to the minor's injuries." <u>Larson</u>, 435 N.E.2d at 226. In doing so, the court specifically noted that, in other jurisdictions, the rule of parental immunity had been preserved where an allegation of negligent supervision by a parent was made. <u>Larson</u>, 435 N.E.2d at 226. The court stated that this issue was not before it because the pleadings in the counterclaim seeking contribution did not allege negligent supervision by the father. <u>Larson</u>, 435 N.E.2d at 225-26.

In <u>Moon</u>, the minor plaintiff was injured when he was riding his bicycle and was struck by

an automobile. Moon, 469 N.E.2d at 365. The plaintiff's father filed a lawsuit against the automobile's driver, and the defendant filed a third-party action for contribution against the plaintiff's parents. Moon, 469 N.E.2d at 365. The trial court dismissed the third-party complaint, finding that the parental tort immunity doctrine barred an action for contribution against the plaintiff's parents, and the defendant appealed. Moon, 469 N.E.2d at 365-66. On appeal, the defendant argued that the parents were under a statutory duty to properly instruct their son in regard to the laws pertaining to the operation of a bicycle. Moon, 469 N.E.2d at 366. The court stated that the "Illinois Motor Vehicles Code makes it unlawful for a parent 'to authorize or knowingly permit' his child to violate any provisions of the Code, including those provisions which set forth the law pertaining to the operation of bicycles." Moon, 469 N.E.2d at 367. The court therefore determined that "[t]his is not a pure case of negligent parental supervision; rather, the parental supervision at issue in this case concerns a statutory duty imposed upon parents by the legislature." Moon, 469 N.E.2d at 367. The court held that the Contribution Act prevailed "[b]ecause this is not an action concerned with a parent's private and personal right to supervise the actions of his child," so that the decision in Larson controlled. Moon, 469 N.E.2d at 367-68.

In Hartigan, the court went a step farther. In Hartigan, the defendants were barbecuing in their backyard when the Hartigans, accompanied by their son, the minor plaintiff, walked across the street to the front of the defendants' home. Hartigan, 470 N.E.2d at 571. While the four adults talked in front of the home, the minor plaintiff went to play with other children in the backyard where he cut his hand on a knife which was on top of the barbecue grill. Hartigan, 470 N.E.2d at 571. The minor plaintiff's father brought a personal injury action against the defendants, who filed a counterclaim and third-party complaint seeking contribution from the minor plaintiff's parents for

9

any part of the injury which was caused by their negligent supervision. Hartigan, 470 N.E.2d at 572. The trial court granted summary judgment to the parents based on the parent-child immunity doctrine, and the defendants appealed. Hartigan, 470 N.E.2d at 572. The appellate court discussed Larson and Moon and recognized that the case before it concerned a pure case of negligent supervision by a parent and not one involving a statutory violation. Hartigan, 470 N.E.2d at 573. The court concluded that it did not believe that "the parental need for discretion in supervising and disciplining their children should prevail over a third-party's right to contribution." Hartigan, 470 N.E.2d at 573. The court stated that the "use of the parent-child immunity to insulate parents from a contribution action is simply not consistent with our present system of equitable apportionment of fault." Hartigan, 470 N.E.2d at 573.

However, 10 days after the decision in Hartigan, Duensing v. Tripp, 596 F. Supp. 389 (N.D. Ill. 1984) was decided. In Duensing, the district court concluded that contribution cannot be sought from the parent of an injured minor plaintiff where the parent's alleged negligent supervision contributed to the injuries. Duensing, 596 F. Supp. at 392-93. The district court stated that the proper approach was to first ascertain whether Illinois would recognize a tort of negligent supervision. The court stated that the "rationale for this approach is that under the [Contribution Act], the right to contribution arises 'where two or more persons are subject to liability in tort arising out of the same injury . . . .'" Duensing, 596 F. Supp. at 391. The court stated that, accordingly, "one essential element of contribution in that the third-party defendant must be liable to the plaintiff for the same injury." Duensing, 596 F. Supp. at 391. The court stated that, in the context of the case before it, the defendant could seek contribution from the mother of the minor plaintiff only "if the mother were liable to the child for the injury." Duensing, 596 F. Supp. at 391. The district court

concluded that "Illinois would not recognize the tort of negligent supervision in this context." Duensing, 596 F. Supp. at 392. In reaching this conclusion, the district court noted that "Illinois does not recognize a third party's claim against the parent based on the parent's negligent supervision of the child." Duensing, 596 F. Supp. at 392. The district court stated that it was "reluctant to hold that a parent owes his or her child a duty to proper supervision which, if breached, would support a tort action on behalf of the child, when the Illinois courts have failed to recognize that the parent owes the same duty to supervise the child to a third party." Duensing, 596 F. Supp. at 392.

Following this decision, the defendant in Duensing requested reconsideration. In Duensing v. Tripp (Duensing II), 613 F. Supp. 766 (N.D. Ill. 1985), the district court reconsidered its decision and carefully reviewed the decisions in Moon and Hartigan. Following this consideration, the district court stated that it stood "on its earlier decision that although the parental immunity doctrine in the contribution context may be abrogated in Illinois, Illinois would not recognize a tort for the parent's negligent supervision of the child." Duensing II, 613 F. Supp. at 767. The district court stated that, although Hartigan explicitly and Moon by implication "recognize a defendant's right to contribution from the parent with regard to facts similar to the ones before this Court, neither case specifically addresses whether or not an action for negligent supervision exists in a parent-child situation, a determination this Court feels must be made prior to ascertaining whether or not contribution would apply." Duensing II, 613 F. Supp. at 768. The district court determined that the Illinois Supreme Court would decide that negligent supervision does not form the basis of a tort action between the child and parent and therefore dismissed the defendant's third-party complaint seeking contribution. Duensing II, 613 F. Supp. at 768.

As it turned out, the district court in Duensing II was fairly accurate in its prediction regarding how the Illinois Supreme Court would rule. In 1993, the Illinois supreme court decided Cates v. Cates, 619 N.E.2d 715 (Ill. 1993). In Cates, the minor plaintiff was a passenger in a car driven by her father when she was seriously injured in a collision with another vehicle. Cates, 619 N.E.2d at 716. Her mother filed a negligence action on her behalf against the estate of the driver of the other vehicle and a construction company engaged in repairing the highway area around the collision site. The minor plaintiff subsequently amended her complaint to add her father as an additional defendant. Cates, 619 N.E.2d at 716. The trial court granted summary judgment in the father's favor based upon parent-child immunity, and the appellate court reversed. Cates, 619 N.E.2d at 716. The case then made its way to the Illinois Supreme Court. In a lengthy decision, the court determined that parent-child immunity still exists subject to exceptions. The court stated:

> Courts should not be involved in deciding matters between parent and child which concern decisions which those persons are uniquely equipped to make because of that relationship; to allow otherwise would unnecessarily and obtrusively inject courts into family matters which they are ill-equipped to decide. <u>Such matters, by definition, involve parental discretion in discipline, supervision and care</u>.

Cates, 629 N.E.2d at 728 (emphasis added). The court stated that it concluded "that the immunity should afford protection to conduct inherent to the parent-child relationship; such conduct constitutes an exercise of parental authority and supervision over the child or an exercise of discretion in the provision of care to the child." Cates, 629 N.E.2d at 729. The court then allowed the case before it to proceed, stating that "[a]pplying the standard we have created, we conclude that

the negligent operation of an automobile is not conduct inherent to the parent-child relationship; such conduct does not represent a parent's decision-making in disciplining, supervising or caring for his child." Cates, 619 N.E.2d at 729. The court noted that the father owed a duty to drive carefully not only to his daughter but to the public generally. Cates, 619 N.E.2d at 729.

Following the decision in Cates, the court in Paterson v. Lauchner, 690 N.E.2d 1048 (Ill. App. Ct. 1998), decided a case involving a minor plaintiff who was injured by a tractor being driven by his father. Paterson, 690 N.E.2d at 1049. The child's mother filed an action on the minor plaintiff's behalf against the father. The appellate court determined that, under the Cates analysis, the negligent operation of any vehicle, whether it is an automobile or a tractor, is not conduct inherent to the parent-child relationship. Paterson, 690 N.E.2d at 1051. The court therefore concluded that the parent-child immunity doctrine did not immunize the defendant father from liability for his alleged negligent operation of the tractor. Paterson, 690 N.E.2d at 1051. However, the court concluded that summary judgment based upon parent-child immunity was properly granted to the defendant father as to the allegation in the complaint that the defendant father failed to properly supervise the minor plaintiff by allowing him to be in the vicinity of a dangerous vehicle. Paterson, 690 N.E.2d at 1052. The court stated that this allegation concerned the defendant's parental discretion in supervising his child and the "supreme court in Cates expressly stated that the parent-child tort immunity doctrine continues to immunize the exercise of parental supervision over a child." Paterson, 690 N.E.2d at 1052.

Also following Cates, the district court in Dewick v. Maytag Corp., 266 F. Supp. 2d 824 (N.D. Ill. 2003), concluded that the defendant could not maintain a contribution claim against the injured minor child's parents. The district court, like the court in Duensing, determined that

13

contribution rights only exist where each of the parties to a contribution claim, the party seeking contribution and the party from whom contribution is sought, is liable to the tort victim. Dewick, 266 F. Supp. 2d at 825. The district court then noted that Cates held that an minor child cannot sue his or her parents for negligence where the conduct at issue is "inherent to the parent-child relationship" which is defined as encompassing "parental discretion in discipline, supervision and care of the child." Dewick, 266 F. Supp. 2d at 825 (emphasis in original), quoting Cates, 619 N.E.2d at 619. The district court determined that, following Cates, the "parents are not liable to their infant child for any claimed lack of due care in the supervision of their child," so the defendants could "not look to them for contribution." Dewick, 266 F. Supp. 2d at 826.

This court concludes that the same result is warranted here. Defendant has relied upon Larson, Moon, and Hartigan in arguing that it is entitled to contribution from Candy. After careful review of these cases, this court concludes that Larson and Moon do not support Defendant's argument because they were not based upon a claim of negligent supervision, which is at issue here. This court further concludes that, although the court in Hartigan held that the defendants could seek contribution based upon the parents' failure to supervise their child, this case is no longer good law following Cates.[2] Based upon Cates, Candy is entitled to parent-child immunity as to any claim by Justin that she failed to properly supervise him. See Paterson, 690 N.E.2d at 1052. Therefore, because Candy cannot be liable to Justin, Defendant is not entitled to contribution from Candy in

---

[2] This court recognizes that Defendant is correct that Cates cited Hartigan, Moon, and Larson and stated that Illinois courts rejected application of the parent-child tort immunity doctrine as a bar to third-party contribution actions against allegedly negligent parents. Cates, 619 N.E.2d at 723-24. This court concludes, however, that this was part of Cates lengthy discussion of the cases dealing with parent-child immunity and was not a part of the holding of the case. This court is convinced that Hartigan is inconsistent with the holding of Cates that parent-child immunity still exists in the area of "parental discretion in discipline, supervision and care." See Cates, 629 N.E.2d at 728.

this case.  See Dewick, 266 F. Supp. 2d at 825-26, Duensing, 613 F. Supp. at 768.

IT IS THEREFORE ORDERED THAT Defendant's Post Trial Motion (#79) is DENIED in its entirety.

ENTERED this 2nd day of July, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE